The opinion of the court was delivered by
Monroe, J.
Plaintiffs, as liquidating commissioners of the “Standard Planing Mill and Manufacturing Company,” sue to recover damages, alleged to have been sustained by reason of the wrongful issuance, by defendant, of a writ of attachment, and the seizure, thereunder, of the property of the company of which they are liquidators. Several grounds for damages are set tip in the petition, but they have all been abandoned with the- exception of two, viz.: the alleged deterioration in the value of the property whilst under seizure, and the attorney’s fees, paid, or incurred, in dissolving the attachment. The defense urged in this court is a general denial.
The facts, as we find them, from the record, are as follows: In May, 1895, the officers of “The Standard Planing Mill and Manufacturing Company,” in view of that company’s financial embarrassment and lack of business, issued a call for a meeting of its stockholders, to be held, after thirty days’ advertisement, upon June 2S, 1895, to consider the situation, and to determine whether there should be a liquidation, etc. Early in June, and whilst the call for the stockholders’ meeting was being published, a meeting of the creditors of the company was convened, and, whilst no definite action was taken, they, with the exception of the present defendant, appeared to be willing that the company should continue in business, if the stock *1399 holders, at the meeting- to be thereafter held, should so determine, and, presumably, if they made some arrangement as to the debts of the company, which were in the neighborhood of $25,000.
After this meeting of the creditors, the company endeavored to reduce its indebtedness, by giving property in payment to such of its creditors as were willing to accept it; turning over some of its horses, mules, wagons, etc., to one creditor; and lumber, rough and dressed, to others. In the meanwhile, its business seemed, practically, to have ceased, and whilst it is said that the plant was operated when there was anything to be done, the impression which we gather from the testimony is, that for ten days or more, prior to June 21, 1895, not a wheel was turned. Upon the date mentioned, the Lumber Company filed its suit, upon notes amounting to $2,224.70, and caused the issuanco of the 'attachment, as stated. The seizure was effected, so far as the real estate was concerned, by registry in the mortgage office; and as to the personal property! presumably, by actual taking into possession by the sheriff. Certain horses, mules, etc., claimed by another creditor as his property, were released on bond, and different lots of lumber were the subjects of claims for vendors’ privileges by other intervenors. Upon the 2nd of August, the entire seizure was released on bond, upon the application of the defendant in attachment.
In the meanwhile, on June 24th, three days after the attachment, James E. Billington & Son, creditors of the seized debtor, filed a sworn petition, alleging its insolvency, and: praying its dissolution and liquidation and the appointment of receivers. Other creditors intervened, and the company, itself, filed an answer, together with a copy of a resolution of its Board 'of Directors, admitting and declaring its insolvency, and all joined in the prayer for dissolution, liquidation, and the appointment of receivers. Accordingly, upon June 24th, the present receivers, or liquidating- commissioners, were appointed, and this action was followed, on June 28th. by the meeting of the stockholders, at which the same were ratified and approved, and the company formally dissolved. The answer to the suit brought by the Lumber Company, was filed by the liquidators, July 2, 1895, and they, on the same day, filed their rule to dissolve the attachment; and there was one judgment, January 21, 1896, in favor of the Lumber Company, on its claim, which was undisputed, but dissolving the attachment on the ground that the allegation to the effect that the *1400 defendant was disposing of its property with intent to defraud, was not sustained. An appeal was taken from this judgment, on the latter point, and the judgment appealed from was affirmed by this court (Lumber Co. vs. Manufacturing Co., 49 Ann., 72).
In June, 1896, the liquidators brought the present suit for damages, 'and they have appealed from a judgment in their favor, awarding them $200.00, and ask that the amount be increased.
It will be seen that the plant was under seizure from June 21st to August'2nd, inclusive, or, say, forty-three days, at the end of which time it was released on bone?, and some two months later was sold to a purchaser, who bought, not for the purpose of running, but to wreck, it; and it is claimed that the defendant should be held liable in damages in the sum of $11,000 on the ground, as set forth in the petition, that, by reason of the attachment, the company was obliged to go into judicial liquidation, and incur the costs of the same, because of the stoppage of its business; and that it was thereby prevented frqjn making a sale of its plant for $20,000.00; that the property deteriorated in value, whilst under seizure, to the extent of $2,000, or more; and that it was compelled to incur attorney’s fees, in dissolving the attachment. These grounds have been abandoned, as has been stated, save the deterioration and the attorney’s fees; it was so, distinctly, announced, at least, in the .oral argument, though the brief filed concludes with the prayer that there be judgment in favor of the plaintiff for $11,000 (being the full amount prayed for in the petition), and such amount for attorney’s fees, as the court shall deem proper. It is probable, however, that the brief was filed before the case Was argued, and the court, will, therefore, confine itself to the points to which the counsel confined themselves in the last argument presented.
Mr. Gauscs was president of the company, and was evidently more familiar with its business, and with the value of the plant, than any one else who testified. He was, moreover, a truthful and conscientious witness. Weighing his testimony carefully, it appears that the idea which he expressed (by no means an unreasonable one) is, that an injury is inflicted upon a plant, which is to be sold as a going concern, by stopping its business; and that machinery which is neglected while not in use may suffer thereby. He does not undertake to say that the plant in question could have been sold, even if it had not been seized, ■ *1401 to any one who wished to buy and operate it, or that, as a matter of fact, the machinery was injured by non-use whilst under seizure. Nor does it seem probable that it should have been, since the seizure, though perfectly effective, was merely on paper, and Mr. Gause, not being actually dispossessed, and remaining about the premises, would not have stood by and allowed the property to go to destruction for lack of attention, without, at least, notifying the sheriff.
As to the injury which may have resulted from the stoppage of the business, that stoppage was a necessary consequence of the condition of the company. A month before the attachment, the officers of the company had published a notice, calling a meeting of the stockholders for June 28th, to consider the question of liquidation. Before that meeting convened, the directors adopted a resolution to the effect that the company was insolvent. And the action of the directors and other officers, in invoking the aid of the court for the purposes of the liquidation, when they assembled according to the notice, was ratified by the stockholders, after the president and directors had fully informed them as to the financial condition of the company, “the losses sustained in business, the suits'including an attachment * * . * involving large claims against said company,” and other matters affecting the company’s interests.
If the company was insolvent on June 24th, when the Board of Directors so declared, it was equally insolvent on June 21st, when the attachment was levied, and the sale of its property must, necessarily, have been effected, either as the result of a seizure by some creditor, or else in the process of liquidation. The testimony of Mr. Billington, therefore, to the effect that he would have been willing to give $25,000, or $28,000, for the plant, at the time of the attachment, aside from being indefinite, is not to the point with reference to the question of the loss, if any, sustained as the result of the attachment, since, in the then existing condition of affairs, the sale could hardly have been made to him, except with the consent of all the creditors; and, if he had really wanted to buy, that consent could as readily, and perhaps more readily, have been obtained after the attachment as, or, than, before. The fact, however ,that he was willing, shortly after the attachment was bonded, in his capacity of liquidator, to make, a sale of all the assets for $20,000, on terms which the court refused to approve, and that, later still, he preferred to hold his position and sell the plant *1402 to a purchaser, who bought merely for the purpose of wrecking, at $16,000, sufficiently indicates that the witnesses was not seriously in the market as a buyer.
If, then, as we think the evidence shows, the business must have stopped from lack of means to pay its debts and carry it on; and the plant could not, therefore, have been sold as that of a going concern, but must, in any event, have been sold, as in point of fact it was sold, in the course, and for the purposes, of the liquidation of the company, the temporary seizure, under the attachment, inflicted no damage which is established by the evidence, or which we find ourselves able to assess.
The admissions as to the insolvency of the company, and the action taken by the directors and stockholders, within a few days after the attachment, were not in evidence for the purposes of the former appeal, and whilst we are not prepared to say that such evidence would have affected the conclusions then reached, it does affect the question of the ability of the company to have gone on with its business, which is important to the case before us. The $200 allowed by the judge a quo, we assume, was for attorney’s fees, and is a reasonable amount for the services rendered.
The judgment appealed from is, therefore, affirmed.